## PROPRIETORS OF LIVERPOOL WHARF *vs.* EDWARD PRESCOTT & another.

If in a real action the true position of the boundary line between the parties, as described in a deed from the demandant to the tenant, is in dispute, and the tenant pleads *nul disseisin*, and, in the specification of the grounds of defence, claims to own so much of the demanded premises as is covered by his deed, and disclaims as to the residue, he cannot be permitted to introduce evidence of adverse possession for twenty years, to establish a title in himself, independently of the deed.

If a deed in express terms describes one of the boundaries of the land conveyed as a line parallel to and at a certain distance from a certain established line, evidence of measurements from other points, not referred to in the deed for the purpose of fixing that boundary, and of the extent of land embraced in a general description of the granted premises.

is inadmissible to prove its position, unless it is shown that the position of the established line referred to cannot now be ascertained.

The order of admitting evidence is within the discretion of the presiding judge; and if, in the exercise of this discretion, evidence is admitted which requires the introduction of further evidence to make it competent for the consideration of the jury, this is no ground for a new trial, unless it appears from the bill of exceptions that such further evidence was not introduced.

WRIT OF ENTRY, to recover a piece of land seventy-five feet in length and fourteen inches in width on the northeasterly side of the demandants' wharf estate between Broad Street and Boston Harbor. The defendants pleaded *nul disseisin,* and filed a specification of the grounds of defence, setting forth two deeds to them from the demandants, by virtue of which they became the owners of, and have since held, the premises covered by the same, and disclaiming the residue of the land described in the writ; and averring that, if any portion of the building on their land projects over the demandants' land, it was so built by the license of the demandants.

At the trial in the superior court, before *Wilkinson,* J., the two deeds from the demandants to the tenants were introduced in evidence. The first was dated April 2, 1838, and conveyed " all that parcel of land, wharf and flats, in said Boston, with the buildings thereon, bounded and described as follows, viz.: Bounded northwesterly on Broad Street, as lately laid out, 174 feet 3 inches, more or less; southwesterly on land of said corporation, 295 feet, more or less, to the channel or low water mark, (this line being parallel to and 110 feet from, the boundary line established between Henderson Inches, and said corporation;) southeasterly on the channel or low water mark, the width, by a line ranging with the end of the wharf, being 175 feet, more or less, and northeastly on the estate now or late of Dolbeare, 255 feet, more or less, from the channel or low water mark to said street; or however otherwise bounded or described; being the Northerly Wharf Estate, so called, of said corporation; together with all the rights, easements, privileges and appurtenances thereto belonging. The premises are shown on a plan taken by S. P. Fuller, March 1, 1838, and are part of the estate conveyed to said corporation by deed of Tristram

Barnard, dated October 3, 1816, recorded with Suffolk deeds in Lib. 253, fol. 290."

The second deed was dated April 6, 1840, and conveyed a strip of land lying southwesterly of the land above conveyed, extending from Broad Street to the channel, and four feet in width.

The boundary line referred to in the first deed as having been established between the demandants and Henderson Inches, was fixed by an indenture between them dated May 27, 1837, in which they declared and agreed that the true and permanent boundary line between their respective lands, wharves and flats should be as therein defined, by reference to buildings and monuments then existing.

There was evidence tending to show that a portion of these buildings and monuments still existed, in the same position as in 1837 ; and that, measuring from the line ascertained by reference thereto, the body of the tenants' building was three and one quarter inches, and the eaves seven and one quarter inches more, over the boundary line between the demandants and the tenants. The tenants claimed title to the land in dispute by possession, independently of deeds. The demandants " objected to the admission of evidence of twenty years' possession of the land described in the tenants first specification of defence, as therein set forth, because, as they claimed, it did not appear that it was the same land claimed by the demandants in their writ, and because evidence of the boundary therein assumed by the tenants was inadmissible in this action. The objection was overruled by the court, on the ground that such evidence was admissible under the pleading."

The tenants were allowed to introduce evidence, under objection, to show where the boundary line of the Dolbeare land, mentioned in the first deed of the demandants to them, was, in 1838, and its distance from the land claimed in the writ. At the time when this evidence was offered, no evidence had been offered to show that the buildings and monuments referred to in the indenture between the demandants and Inches were in any different position from that which they occupied in 1837, or

that the measurements thereupon were in any respect incorrect, unless, as the tenants claimed, such evidence could be found in certain deeds and plans, which had been put into the case, and certain measurements thereon indicated; and the demandants contended that until such evidence was offered, and unless it should be shown that the line established in 1837 could not now be correctly ascertained, the evidence of measurements from other points was inadmissible. The judge however admitted it, with reference not only to evidence then in the case, but to that which was proposed to be introduced by the tenants.

The tenants were also allowed to introduce evidence, under objection, tending to show that, at the date of the first deed to them, there was an estate well known as the Northerly Wharf Estate, and what it was; but the judge instructed the jury that the evidence both in relation to the Dolbeare line and the Northerly Wharf Estate was to be considered by them only in case the line established in 1837 between the demandants and Inches could not be ascertained, and that the line so established, if it could be ascertained, would, as the demandants claimed, control all the other calls of the deed to the tenants for length of lines and description of estate.

The jury returned a verdict for the tenants, and the demandants alleged exceptions.

*C. B. Goodrich & J. D. Bryant,* for the demandants.

*A. A. Ranney,* for the tenants.

CHAPMAN, J. The demandants' writ describes a tract of land seventy-five feet in length and fourteen inches in width, lying on the southwesterly side of the line which divides the lands of the parties, and adjoining thereto. The line between the parties is described as being parallel to and distant northeasterly one hundred and six feet from the boundary line between the wharf property of Henderson Inches and the estate of the demandants.

The tenants plead *nul disseisin,* and add a specification of defence, according to the system of pleading which is still continued in real actions. The specification alleges, 1. That the demandants made two deeds, one dated April 2, 1838, and the

other April 6, 1840 ; the first conveying a tract of land therein described ; the second conveying a tract of land lying southwesterly of the first tract and adjoining thereto, and being four feet in width, under which deeds the tenants claim title to the land which the deeds describe.    2. As to all the residue of the land sued for, they disclaim.    3. " If any portion of the build ing on defendants' said land projects over or on to the demandants' land, it was so built and constructed by the leave and license of said demandants."

The report states that " the tenants claimed title to the land in dispute by possession independently of deeds."    By this it is to be understood that they claimed title, even though the land in dispute should be found to be external to that described in the deeds.    The report further states that the demandants' counsel objected to the admission of evidence of twenty years' possession.    But the ground of the objection is not very clearly stated.    Indeed, the report bears marks of haste or carelessness in several important points, and the specification is very loose and inartificial.    But it is stated that " the objection was overruled by the court, on the ground that such evidence was admissible under the pleading."

The court are of opinion that, under the plea and specification by which the tenants disclaimed as to all the land lying southwesterly of that described in the two deeds above mentioned, evidence of adverse possession of any part of the land thus disclaimed was inadmissible.    For this disclaimer left but two questions open : 1. To ascertain the southwesterly line of the tract described in the deeds ; and 2. The existence and effect of the alleged license.    No question as to the license is raised by the exceptions, and therefore there is no occasion to speak of it further.

But in respect to the southwesterly line, evidence was offered which was objected to.    It was admitted, and the demandants except to its admission.    The report does not make it clear that it was inadmissible.

On this point it appears that the tenants' southwesterly line was established by his deeds to be one hundred and six feet

distant from and parallel to the line of Henderson Inches. In order to make the evidence offered admissible, there must have been some evidence tending to show that the position of this line could not be ascertained. When the evidence was admitted, no such evidence had been offered by the tenants. But the tenants allege that such evidence was offered afterwards. If this were so, the evidence was admissible, for the order in which evidence shall be received is within the discretion of the presiding judge, and his ruling is not subject to exception. Whether any evidence on the point was offered afterwards does not clearly appear, and therefore the exception is not sustained ; for this court cannot know whether the demandants were aggrieved by the ruling.

The final instruction to the jury was correct; for if the line of Henderson Inches could be ascertained, the distance of the Dolbeare line was immaterial. *Exceptions sustained.*